## STATE *vs.* WALTER E. MYLOD.

PROVIDENCE—JULY 18, 1898.

PRESENT : Matteson, C. J., Stiness, Tillinghast, Wilbur, Rogers, Douglas, and Bosworth, JJ.

One cannot question the constitutionality of a statute unless his rights would be affected by its enforcement.

The duty of a court to construe a statute arises only when its meaning is obscure ; if the legislature has plainly expressed its meaning, construction is excluded.

In the construction of penal statutes words and phrases must be taken in their ordinary acceptation and popular meaning, unless a contrary intent appears.

Words of such statutes are not to be restricted in meaning within the narrowest limits, nor extended beyond their common interpretation ; and the accused is entitled to the benefit of any reasonable doubt as to whether the acts done are within the meaning of the statute.

The object of the statute relating to the registration of physicians is to regulate the practice of medicine and surgery, and thereby secure the safety and protect the health of the public.

The " practice of medicine " relates to the art of preventing, curing, or alleviating disease or pain ; popularly, it consists in the discovery of the cause and nature of disease and the administration of remedies, or prescribing treatment therefor.

Mere words of encouragement, prayer for divine assistance, or the teaching of " Christian science," do not constitute the practice of medicine in either of its branches.

The State Board of Health is not clothed with arbitrary power ; it can only determine whether an applicant for a certificate to practice medicine possesses the statutory qualifications to practice in accordance with the recognized theories of a particular school or system.

The assumption of the title of " doctor " is not prohibited by statute, and is not unlawful.

COMPLAINT charging the practice of medicine and surgery for reward without registration and license. Certified from a District Court and heard on the constitutionality of Gen. Laws R. I. cap. 165.

BOSWORTH, J. The defendant was adjudged probably guilty, in the District Court of the Sixth Judicial District, upon complaint of Gardner T. Swarts, secretary of the State Board of Health. Said complaint, which was made under cap. 165, Gen. Laws R. I., alleges that the defendant, at Providence, on the twenty-sixth day of November, 1897, "did

then and there practice medicine and surgery for reward and compensation, without lawful license, certificate, and authority, and not being then and there duly registered according to law."

The defendant, upon arraignment, pleaded not guilty, and subsequently, and before judgment, raised a question of the constitutionality of said cap. 165, which question, in accordance with the provisions of cap. 250, Gen. Laws R. I., was certified and transmitted to the Appellate Division of the Supreme Court for decision.

Gen. Laws R. I. cap. 165, provides for the registration of physicians, and its object is to regulate the practice of medicine and surgery. Under this chapter, authority to practice medicine and surgery is through a certificate issued by the State Board of Health, and said board, upon application, and without discrimination against any particular school or system of medicine, is required to issue such certificate to any reputable physician, practicing or desiring to begin the practice of medicine or surgery in this State, who possesses certain specified qualifications.

Section 2 of said chapter, in part, is as follows:

"SEC. 2. It shall be unlawful for any person to practice medicine or surgery in any of its branches, within the limits of this state, who has not exhibited and registered in the city or town clerk's office of the city or town in which he or she resides, his or her authority for so practicing medicine as herein provided, together with his or her age, address, place of birth, and the school or system to which he or she proposes to belong."

Section 8 of said chapter is as follows:

"SEC. 8. Any person living in this state or any person coming into this state, who shall practice medicine or surgery, or attempt to practice medicine or surgery in any of its branches, or who shall perform or attempt to perform any surgical operation for or upon any person within the limits of this state for reward or compensation, in violation of the provisions of this chapter, shall upon conviction thereof be fined fifty dollars, and upon each and every subsequent con-

viction shall be fined one hundred dollars and imprisoned thirty days, or either or both, in the discretion of the court; and in no case, where any provision of this chapter has been violated, shall the person so violating be entitled to receive compensation for services rendered. To open an office for such purpose, or to announce to the public in any other way a readiness to practice medicine or surgery in this state, shall be to engage in the practice of medicine within the meaning of this chapter."

For the State, Everett Hall testified, substantially, that he called upon the defendant at his residence and asked to be cured of malaria; that the defendant said he was Doctor Mylod; that the defendant sat looking at the floor, with his eyes shaded, as if engaged in silent prayer, for about ten minutes, and then looking up said, "I guess you'll feel better;" that defendant gave him a book entitled "A Defence of Christian Science;" that he gave defendant one dollar; that defendant did not recommend nor administer any drug or medicine, nor take his pulse or temperature, nor do any of the things usually done by physicians.

Clarence Vaughn, in behalf of the State, testified that he called upon the defendant at his residence on two occasions and requested to be cured of grippe; that he gave defendant one dollar each visit; that defendant said he was Doctor Mylod; that defendant gave him a card stating the defendant's office hours and describing defendant as a Christian Scientist, but not in any way referring to defendant as a physician; that defendant did not take his pulse or temperature, nor do any of the other things that physicians do in treating disease, but seemed to be sitting in silent prayer; that defendant gave him a book entitled "An Historical Sketch of Metaphysical Healing;" that defendant told him to look, not on the dark side of things, but on the bright side, and to think of God, and it would do him good, since thought governs all things.

Dr. Gardner T. Swarts, secretary of the State Board of Health, testified that the defendant is not a registered physician; that said defendant does not have authority to practice

medicine in Rhode Island, and that physicians often cure disease without the use of drugs or medicine.

For the defence, the charter of the Providence Church of Christ, Scientist, was introduced in evidence, and the defendant testified, substantially, that he is the president and first reader or pastor of said church; that said church has been organized and has held regular religious services for seven years; that said church belongs to the sect known as Christian Scientists, in whose belief God and Jesus Christ and the Bible hold a supreme place; that the principal distinguishing difference between Christian Scientists and other sects consists in the belief of the former regarding disease, which they believe can be reduced to a minimum through the power of prayer; that the public religious services of said church consist of silent prayer, music, reading of the scriptures and of extracts from "Science and Health," by Mary G. Baker Eddy; that he, beyond a greater realization of truth which his longer study of Christian science may have given him, professed to have no greater power over illness than that possessed by any member of his church; that he did not tell the witnesses Hall and Vaughn that he could cure them, nor did he call himself a doctor; that he did not attempt to cure them by means of any power of his own; that he assured them that it is God alone who heals, acting through the human mind; that all he did was to engage in silent prayer for them, and to endeavor to turn their thoughts to God and toward the attainment of physical perfection; that the efforts made for them were precisely the same in character as those which he makes for his congregation at the public services of his church; that he does not practice medicine nor attempt to cure disease; that he has no knowledge of medicine or surgery; that, as a Christian Scientist, he never recommended to any one a course of physical treatment; that he has only the method of prayer, and effort to encourage hopefulness for all who come to him in public or private, and whatever disease they imagine they have; and that his ministrations often can be, and are, rendered as effectively in the absence as in the presence of the beneficiary.

Other witnesses were called, but there was no material variance in the testimony, except that the witnesses Hall and Vaughn testified that the defendant said that he was Doctor Mylod, which testimony was contradicted by the defendant.

The constitutional question raised by the defendant is that, under § 3, Art. 1, Const. R. I., which secures to him religious freedom, he has a right to perform the acts shown by the testimony to have been performed, and that, therefore, said cap. 165, Gen. Laws R. I., under which said complaint was made, is unconstitutional if, and in so far as, it provides a penalty for the performance of said acts.

This question, properly, cannot be considered by the court unless said cap. 165 is sufficiently broad to include within its prohibitive provisions the acts of the defendant; for the defendant cannot question the constitutionality of said chapter unless his rights would be affected by its enforcement. *State* v. *Snow*, 3 R. I. 64.

There is no testimony tending to show that the defendant practiced or attempted to practice surgery, or that he made any diagnosis or examination to ascertain whether the witnesses Hall and Vaughn were suffering from disease, or that he administered or prescribed any drug, medicine, or remedy, or that he claimed any knowledge of disease or the proper remedies therefor.

Upon the testimony, the only claim that can be made by the State is that upon a card handed to one of the witnesses appeared the name and office hours of the defendant; that the defendant said he was Doctor Mylod; that he offered silent prayer for the witnesses Hall and Vaughn, who claimed to be suffering from disease; that he gave said witnesses each a book in which, presumably, the principles of Christian science were taught, explained, and defended; that he told the witness Vaughn, substantially, to look on the bright side of things and think of God, and it would do him good; and that he accepted compensation for his services.

Did these acts of the defendant constitute the practice of medicine, in violation of cap. 165, Gen. Laws R. I.?

It is the duty of the court to give effect to the intention of the law-making power as embodied in the statutes. The legislature is presumed to mean what it has plainly expressed, and when it has so expressed its meaning, construction is excluded. It is only when the meaning of the statute is obscure, or the words employed are of doubtful meaning, that, in order to give effect to the legislative intention, the duty of construction arises. In the construction of penal statutes, a well-established rule is that words and phrases must be taken in their ordinary acceptation and popular meaning, unless a contrary intent appears. While the words of such statutes are not to be restricted in meaning within the narrowest limits, neither are they to be extended beyond their common interpretation; and if there is a reasonable doubt as to whether the acts done are within the meaning of the statute, the party accused of its violation is entitled to the benefit of that doubt. Endlich on Int. of Statutes, §§ 329, 330.

It follows, therefore, that the acts complained of are excluded from the operation of said cap. 165 unless the words "practice of medicine," taken in their ordinary or popular meaning, includes them, or unless it appears from said chapter that the legislative intent was to give to said words a meaning broader and more inclusive than the popular one.

Medicine, in the popular sense, is a remedial substance. The practice of medicine, as ordinarily or popularly understood, has relation to the art of preventing, curing, or alleviating disease or pain. It rests largely in the sciences of anatomy, physiology, and hygiene; it requires a knowledge of disease, its origin, its anatomical and physiological features, and its causative relations; and, further, it requires a knowledge of drugs, their preparation and action. Popularly it consists in the discovery of the cause and nature of disease, and the administration of remedies or the prescribing of treatment therefor.

Prayer for those suffering from disease, or words of encouragement, or the teaching that disease will disappear and physical perfection be attained as a result of prayer, or that

humanity will be brought into harmony with God by right thinking and a fixed determination to look on the bright side of life, does not constitute the practice of medicine in the popular sense.

The State, however, contends that said cap. 165, taken as a whole, indicates a legislative intention to give to the words "practice of medicine" a meaning broader than the popular one. In support of this contention it calls attention to the provision contained in section 8 of said chapter, that "To open an office for such purpose," that is, for the practice of medicine or surgery, "or to announce to the public in any other way a readiness to practice medicine or surgery in this State, shall be to engage in the practice of medicine within the meaning of this chapter." In view of this provision, the State contends that to practice medicine it is not necessary to use internal or other remedies, nor to make diagnoses, nor to have a patient, but that the opening of an office for the practice of medicine, or the announcement of a readiness to engage in such practice, constitutes a practice of medicine; and, therefore, as the statute applies not only to those who actually practice, but also to those who announce in any way a readiness to practice, the State contends that the legislature intended to give a broader than the generally accepted meaning to the words "practice of medicine."

We are unable to agree with this contention. Without passing upon the provision referred to, and whatever its significance, it certainly cannot be construed to broaden, in a general sense the meaning of the words "practice of medicine." The most that can be claimed for it is that it operates to broaden the offence created by said cap. 165, so that the attempt or the announcement of a readiness to practice medicine becomes equivalent to the actual practice.

The State further calls attention, in support of its contention, to section 6 of said chapter, which provides that "nothing in this chapter shall be so construed as to discriminate against any particular school or system of medicine," and it argues that, as the statutory prohibition relates to the practice of medicine "in any of its branches," and that as certain

diseases, such as insanity and nervous prostration, are treated
by the so-called " regular school " without the use of drugs,
and that as all schools recognize the study of mental condi-
tions as affecting bodily health as forming a distinct branch
of medicine, the legislative intention to give to the words
" practice of medicine " a construction sufficiently broad to
include the practice of Christian science is clearly manifest.

The words of the provision against discrimination, like the
words " practice of medicine," must be taken in their ordi-
nary sense and meaning.　It is a matter of common knowl-
edge that among medical men there are defined differences
regarding the treatment of disease.　These differences have
resulted in different schools or systems of medicine.　A recog-
nition of the existence of such differences, however, does not
broaden the meaning of the words " practice of medicine " to
include the practice of that which, in the popular sense, is
not a practice of medicine.　Neither does the statutory refer-
ence to the practice of medicine " in any of its branches "
affect the meaning of the words in question.　While it is
true that the study and treatment of mental disease consti-
tute one of the departments or branches of medicine, in which
the influence of the mind over the body is recognized, yet
mere words of encouragement, prayer for divine assistance,
or the teaching of Christian science as testified, in the opin-
ion of the court, does not constitute the practice of medicine
in either of its branches, in the statutory or popular sense.

To give to the words " practice of medicine " the construc-
tion claimed for them by the State, in the opinion of the court
would lead to unintended results.　The testimony shows that
Christian Scientists are a recognized sect or school.　They
hold common beliefs, accept the same teachings, recognize as
true the same theories and principles.　If the practice of
Christian science is the practice of medicine, Christian science
is a school or system of medicine, and is entitled to recognition
by the State Board of Health to the same extent as other
schools or systems of medicine.　Under said cap. 165 it can-
not be discriminated against, and its members are entitled to
certificates to practice medicine provided they possess the

statutory qualifications. The statute, in conferring upon the State Board of Health authority to pass upon the qualification of applicants for such certificates, does not confer upon said board arbitrary power. The board cannot determine which school or system of medicine, in its theories and practices, is right; it can only determine whether the applicant possesses the statutory qualification to practice in accordance with the recognized theories of a particular school or system. It would be absurd to hold that under said cap. 165, which provides against discrimination, the requirements necessary to entitle an applicant to a certificate were such that the members of a particular school or system could not comply with them, thus adopting a construction which would operate not as a discrimination only, but as a prohibition. On the other hand, to hold that a person who does not know or pretend to know anything about disease, or about the method of ascertaining the presence or the nature of disease, or about the nature, preparation, or use of drugs or remedies, and who never administers them, may obtain a certificate to practice medicine, is to hold that the operation of the statute is to defeat the beneficial purposes for which it was enacted.

The cases cited by the State do not sustain its contention. In *Nelson* v. *Harrington*, 72 Wis. 591, the plaintiff brought suit against the defendant, who was a clairvoyant physician, to recover damages for alleged unskillful treatment. In testimony it appeared that the defendant held himself out as a healer of disease and accepted compensation; that he determined the nature of the disease for which he treated the plaintiff, and the character of the remedies he administered, while in a mesmeric state or trance condition. The court held that the defendant was bound to exercise reasonable skill, and that the knowledge of the plaintiff of his methods was no defence to the action.

In *Bibber* v. *Simpson*, 59 Me. 181, which was an action brought to recover compensation for services, the opinion of the court is as follows. "The services rendered were medical in their character. True, the plaintiff does not call herself a physician, but she visits her sick patients, examines

their condition, determines the nature of the disease, and prescribes the remedies deemed by her most appropriate. Whether the plaintiff calls herself a medical clairvoyant, or a clairvoyant physician, or a clear-seeing physician, matters little; assuredly such services as the plaintiff claims to have rendered purport to be, and are to be deemed, medical, and are within the clear and obvious meaning of R. S. 1871, c. 13, § 3, which provides that 'no person except a physician or surgeon, who commenced prior to February 16, 1831, or has received a medical degree at a public medical institution in the United States, or a license from the Maine Medical Association, shall recover any compensation for medical or surgical services, unless previous to such services he had obtained a certificate of good moral character from the municipal officers of the town where he then resided.' The plaintiff has not brought herself within the provisions of this section and cannot maintain this action."

In *Wheeler* v. *Sawyer*, 15 Atl. Rep. 67 (Me. 1888), the plaintiff, a Christian Scientist, brought suit to recover for services. Cap. 13, § 9, R. S. (Me.) 1888, is the same as cap. 13, § 3, R. S. 1871, except that it does not relate to physicians and surgeons practicing prior to February 16, 1831. The plaintiff had received the certificate of good moral character required by the statute. The court said: "We are not required here to investigate Christian science. The defendant's intestate chose that treatment. There is nothing unlawful or immoral in such a contract. Its wisdom or folly is for the parties, not for the court to determine."

In *State* v. *Buswell*, 40 Neb. 158, the defendant was indicted for the unlawful practice of medicine. In Nebraska, Laws of 1891, cap. 35, the practice of medicine, surgery, and obstetrics is prohibited except by persons possessing certain qualifications. Section 17 of said cap. 35, in part, is as follows: "Sec. 17. Any person shall be regarded as practicing medicine within the meaning of this act who shall operate on, profess to heal, or prescribe for or otherwise treat any physical or mental ailment of another." The defendant was a Christian Scientist, and the evidence against him upon which

the State relied was similar in character to that in the case under consideration. The trial court instructed the jury that, in order to convict the defendant, they must find that the defendant had practiced medicine, surgery, or obstetrics, as those terms are usually and generally understood, and the State excepted.

The Supreme Court, in sustaining the exception, uses the following language: "Governed by the instruction, the jury could not do otherwise than to acquit, for there was no proof to meet its requirements."

Again: "The statute does not merely give a new definition to language having already a given and fixed meaning. It rather creates a new class of offences, in clear and unambiguous language, which should be interpreted and enforced according to its terms."

Again: "Under the indictment the sole question presented, upon the evidence, was whether or not the defendant, within the time charged, had operated on, or professed to heal or prescribe for, or otherwise treated, any physical or mental ailment of another."

The decision of the Nebraska court, therefore, is that while the practice of Christian science is not a practice of medicine as those terms usually and generally are understood, yet that, under the section above quoted, the practice of Christian science, being a treatment for physical or mental ailments, is a violation of the law.

In Missouri, the statute requires that before a person may lawfully practice medicine or surgery he must file a copy of his diploma with the clerk of the county court, and it further provides (R. S. § 6304) that any person, not qualified, who shall practice medicine or surgery shall not be permitted to receive compensation for services rendered "as any such physician or surgeon."

In *Davidson* v. *Bohlman*, 37 Mo. App. 576, the plaintiff having brought suit to recover for services, the question raised was whether the services were performed by the plaintiff as a physician. The plaintiff had practiced medicine,

lawfully, for nearly thirty years, first as an allopathic physician and later as an electric physician; he had a diploma from an electric medical college, but had failed to file a copy of it, as required by law; the services for which he claimed compensation consisted of electrical treatment; the bill for services furnished the defendant described the plaintiff as "Dr. T. P. Davidson," and the plaintiff called a medical practitioner to testify to the value of the services in question. The Court of Appeals, upon the testimony, held that the services were performed by the plaintiff as a physician, and that not being qualified to practice he could not recover.

The assumption of the title of "doctor," if defendant assumed such title, was not unlawful. Cap. 165 does not, in terms, prohibit the use of the word "doctor" by any person, whatever his business or profession may be. Its use is entirely immaterial in any case, unless under such conditions or circumstances, or in such connection, that it may serve as an announcement or indication of a readiness to engage in the practice of medicine or surgery.

The object of the statute in question is to secure the safety and protect the health of the public. It is based upon the assumption that to allow incompetent persons to determine the nature of disease, and to prescribe remedies therefor, would result in injury and loss of life. To protect the public, not from theories, but from the acts of incompetent persons, the legislature has prescribed the qualifications of those who may be entitled to perform the important duties of medical practitioners. The statute is not for the purpose of compelling persons suffering from disease to resort to remedies, but is designed to secure to those desiring remedies competent physicians to prepare and administer them. See *Smith* v. *Lane*, 24 Hun, (31 N. Y.) 632.

The opinion of the court is that the words "practice of medicine," as used in Gen. Laws R. I. cap. 165, must be construed to relate to the practice of medicine as ordinarily and popularly understood, and that the acts of the defendant do not constitute a violation of said chapter. The court, therefore, cannot properly pass upon the constitutional question

raised, for the rights of the defendant would not be affected by any conclusion to which the court might arrive.

*Charles F. Stearns, Assistant Attorney-General*, for State.
*George A. Littlefield*, for defendant.