MUTUAL RESERVE FUND LIFE ASSOCIATION *v.* AMELIA
J. OGLETREE.

LIFE INSURANCE. *Application. Agent fully advised. False answers.*

If the agent of an insurance company be fully advised of the facts,
and write or advise false answers to the inquiries contained in
the written application, his principal cannot avoid the policy
because of such answers.

FROM the chancery court of Kemper county.

HON. ADAM M. BYRD, Chancellor.

Amelia J. Ogletree, appellee, was the complainant in the
court below; the Mutual Reserve Life Association, the appel-
lant, and one Rosenbaum were defendants there. The bill
averred that Benjamin H. Ogletree, complainant's husband,
insured his life in the appellant company for her benefit; that
he died after the issuance of the policy, and that proofs of his
death had been made to appellant; that the policy was in the
possession of the defendant, Rosenbaum, to whom it was as-
signed by complainant in order to secure a debt due that
gentleman by complainant's deceased husband; that the de-
fendant, Rosenbaum, and the appellant were confederating
and combining to compromise the demand on the policy
to the injury of the complainant. The bill sought to re-
cover on the policy, and prayed for an accounting to ascer-
tain the sum justly due Rosenbaum, for which he held the
policy as security, and asked that a sufficient sum of the pro-
ceeds of the policy be paid to Rosenbaum to satisfy his debt,
and that the balance be paid over to the complainant. The
insurance company answered the bill, and set up as a defense
that Benjamin H. Ogletree obtained the policy of insurance
upon the faith of his answers to certain interrogatories which
were propounded to him, and which answers he warranted to

be true; that by the terms of the policy, if the answers were untrue, the policy itself was void; that the questions so propounded to Ogletree were these: (1) "Are you now and have you been in good health throughout the past twelve months, and free from all ailments, diseases, weakness, and infirmities?" To which the said Ogletree answered: "Yes." (2) "Are you now and have you always been in good health, free from all ailments, diseases, weakness, and infirmities?" To which the said Ogletree answered: "Yes." (3) "Have you ever had any ailment, local disease, weakness, or ailment of the head, throat, lungs, heart, stomach, liver, kidneys, bladder, or any disease or infirmity whatever? If so, state the nature, date, duration, and severity of the attack, and state whether fully recovered." To which the said Benjamin H. Ogletree answered: "Nothing except a slight attack of biliousness; never to the extent of calling a physician." (4) "How long since you consulted or was attended by a physician? Give date." To which the said Ogletree answered: "Not for the last thirty-five years." (5) "Give the name and address of each physician who has prescribed for or attended you within the last five years, and for what disease or ailment, and date." To which the said Ogletree answered: "None." (6) "Have you had any ailments, diseases or medical attention not stated above?" To which the said Ogletree answered: "None." The defendant averred that each and every one of the said answers to the questions aforesaid were false and untrue, and it averred that on the 7th and 12th days of June, 1896, only a short time before the policy was issued, the said Ogletree consulted a physician for a disease of the liver and heart, and the physician prescribed medicine for him on both of said days, and the answer averred that the physician constantly attended Ogletree, and he and other physicians treated him for the disease of the liver and heart until the time of his death. Testimony was taken, and there was evidence which tended to show that on the 7th of June, 1896, Ogletree was in the company of a physician at Gains-

ville. Ala., and the physician then discovered that Ogletree was suffering from a liver complaint and prescribed for him, and met him again on the 12th of the same month, though it is not known whether this meeting was casual or whether the physician was sent for by Ogletree; at any rate, the physician again prescribed for him on the latter date.

The witness, William Ogletree, referred to in the opinion, was a son of the insured, and he testified that he was present when his father was examined for insurance, and that he remembered distinctly that his father informed insurer again, at the end of his examination, of his consultations with the physician on the 7th and 12th of June, 1896, and told him that the physician had prescribed for him for biliousness, or liver complaint, and that the agent reduced the answers to writing with knowledge of the facts.

The decree of the court below held the appellant liable upon the policy, and ordered the full amount due on the policy to be paid into court, there to remain until the accounting could be had; and it provided that after the accounting, so much of the money as was necessary to satisfy Rosenbaum's debt should be paid to him, the balance to complainant. The defendant, the Mutual Reserve Fund Life Association, appealed to the supreme court.

*J. A. P. Campbell,* for appellant.

The state of the case is this: The defense of false answers to questions is fully established by the evidence of the fact of Ogletree's having been prescribed for by Dr. Bickley June 7 and 12, 1896, and having continued to be diseased fatally until his death, September 3, 1897, although he was apparently well and attentive to business to the day of his death. He attached little importance to his ailment, and that accounts for his failure to state the important fact that he had been examined and treated by Dr. Bickley.

The true interpretation of § 2327 of the code is too plain

for dispute among lawyers. The last clause limits its operation and can cut no figure here, though it is said to have been influential below.

On the foregoing presentation there should have been no hesitation to decree for the defendant below. The only reliance to impair this defense is the testimony of William Ogletree, which careful examination will show to be improbable and unworthy of belief on its face: and it is shown to be untrue by the testimony of Bickley, Pearson, and Mooney. The defense therefore should stand, for a solemn written instrument is not to be overthrown except by satisfactory evidence enabling the court to feel confident that it does not speak truly. The court is familiar with this rule, which applies with all its force here. I ask reversal and decree here dismissing the bill.           .

*Cochran & Bozeman,* on same side.

The vital question in this case is whether the contract made by Ogletree with the appellant is valid and binding, and whether it was competent for the appellee to prove by the oral testimony of William Ogletree that the insured made statements to his agent, Mooney, the medical examiner, when he made his application, and that Mooney did not write the statements, proven by William Ogletree, in the application.

There is nothing unfair or unreasonable in the contract, and it was perfectly competent for it to stipulate that as to the matter of writing out Ogletree's answers in the application the solicitor and the medical examiner should be the agents of Ogletree. This question has been settled by this court.

"We do not say that this company could not restrict the apparent and ostensible authority of its agent. It might be altogether fair and reasonable to write or print in the applications, with which the agents were supplied, a notice that the company, in taking risks, would be governed exclusively by the surveys and answers to the written interrogatories, and not by any verbal answers given to the agent, or information imparted to

him, unless written in the application." *Planters' Ins. Co.* v. *Myers,* 55 Miss., 500. Chalmers, J., in a concurring opinion in the above case, said: "I see no difficulty, however, in constituting him the agent of the company for some purposes and of the applicant for others. For instance, the company might well stipulate that if its agent took part in filling out the application he should be regarded *pro hac vice* as the agent of the applicant, and that neither his acts in so doing, nor any information communicated to him, should bind them unless transmitted to them by the writing, and by them approved. In neither of the cases which have been referred to were these provisions contained, and that distinguishes those authorities from this action; for in this instance the assured assumed the responsibility for the correctness of the acts of the agent in filling out and completing the application, and thereby conclusively bound himself for the truth of the statements which had been made. The effect of his agreement to accept for himself, and become bound by, the acts of the agent in filling out the application as those of his own agent was considered in *Chase* v. *Insurance Company,* 20 N. Y., 52, and also in *Alexander* v. *Insurance Company,* 66 N. Y., 464; *Insurance Company* v. *Fletcher,* 117 U. S., 519; and these authorities all agree where the assured in this manner accepts and binds himself for the truth of the statements contained in the applica tion that he cannot be relieved from that result by proof of the fact afterwards made that the agent improperly, as well as untruthfully, filled out the application. Where, on the contrary, he expressly assumes the acts of the agent as his own acts, and binds himself for the truth of the statements made, then neither he nor his representatives can be relieved from the effect by proof that the agent had acted faithlessly. This results from the voluntary agreement of the insured himself, over which a court of justice has no authority by way of relief. . . . There is a probability that this agent, in reducing the

answers of the insured to writing, was faithful to the obligations of his employment, for he stated in his evidence that he filled out the blank from information obtained from Mr. Sanford, and that it was all in conformity with what he had stated to the agent." *Wilkins* v. *Mutual Reserve Fund Life Assn.,* 7 N. Y. Sup., 591.

*W. R. Smith* and *T. W. Brame,* for appellee.

The evidence shows that when Benjamin H. Ogletree was examined by Dr. Mooney that he told Mooney that he had been suffering from a bilious attack, and that Dr. Bickley had prescribed for him, which answer Mooney failed to put down; therefore the company is bound by said answer, whether it was put down or not. Mooney does not deny that Ogletree told him that Bickley had prescribed for him. Mooney says he does not remember, which, at best, is mere negative testimony, while the evidence of William Ogletree on that point is positive, and he stands unimpeached, and his testimony must be accepted; that Mooney was the agent of the insurance company, see § 2327, code of 1892. Even if Ogletree, the insured, had answered as shown in the application, it was a mere representation; but as he did not so answer, as shown by the evidence of William Ogletree, it does not approach to the dignity of a shadow of a warranty. 22 L. R. A., 325; 11 Am. & Eng. Enc. L., 291, 292; *Ala. Gold Life Ins. Co.* v. *Johnson,* 2 So. Rep., 125; 58 Ala., 476-487; 88 Ala., 606; *Mouler* v. *American Life Ins. Co.,* 111 U. S., 447; *First National Bank, Kansas City,* v. *Hartford F. Ins. Co.,* 95 U. S., 563. See, also, following: 23 N. E. Rep., 498-500, 997; 11 *Ib.,* 477; 30 *Ib.,* 723; 26 *Ib.,* 1082; 10 L. R. A., 667.

Benjamin H. Ogletree answered the questions truthfully, and Moody failed to record them; hence the insurance company is bound by the answers as given by Ogletree, and are estopped from denying the same. 11 So. Rep., 477; U. S. Supreme Court Reps. (Lawyers' Ed.), book 22, 593; *Pickles* v. *Phoe-*

*nix Ins. Co.,* 21 N. E. Rep.; 88 Ala., p. 606. Also following: 53 Miss., 1; 56 Miss., 180; 55 Miss., 479; 57 Miss., 308; 21 N. E. Rep., 898; 22 L. R. A., 325.

The sickness, for the answers to be false, must be a disease or ailment of some importance, not trivial in its nature, not mere indisposition   10 L. R. A., 667 (3d footnote); 30 N. E. Rep., 723; U. S. Supreme Court Rep., book 20, 617.   According to the testimony of Dr. Bickley, the disease or ailment with which Ogletree was suffering was a trivial attack of biliousness, and Dr. Bickley is one of the leading witnesses for the defendant.

Argued orally by *J. A. P. Campbell,* for appellant.

WOODS, C. J., delivered the opinion of the court.

If the evidence of William Ogletree was competent and credible, the decree of the court below must be affirmed. That it was competent is well settled by the adjudications of this court. We refer to one only. In the case of *Planters' Insurance Co.* v. *Myers,* 55 Miss., 479, the court said: "We adopt the doctrine of those cases which hold that, if the agent takes charge of the preparation of the application, or suggests or advises what shall be answered, or what will be a sufficient answer, the company shall not avoid the policy because they are false or untrue, if full disclosures were made by the applicant to him." See the opinion of the court, delivered by Simrall, C. J., and also the concurring opinion of Chalmers, J., in that case, in which he qualifies his former opinion in *Cooperative Association* v. *Leflore,* 53 Miss., 1.

The evidence of William Ogletree shows that the insured did state to the medical examiner of the insurer that Dr. Bickley had prescribed for him for a temporary bilious ailment, and the medical examiner in his evidence more than once states that he has no recollection of such answer having been made at the time of the examination by the applicant for insurance. But to put the matter beyond controversy, the

medical examiner, on cross-examination, was asked this question, viz.: "When you say that you do not remember that Ogletree (the applicant) made any statement about being prescribed for by Dr. Bickley, do you mean to say positively that no such explanation was made, or do you simply mean that you do not remember?" To which he replied: "I mean to say that I do not remember any such statement." While it is true that the medical examiner afterwards testified that if such statement, as to Dr. Bickley's prescribing for the applicant, had been made, he would have written it in the application, yet he frankly admits that he did not write all that the applicant said to him in answering questions propounded to him, but only the substance of the answers—the substance, of course, according to the conception of the examiner, and not according to the conception of the applicant.

The truth is, the applicant had escaped doctors and drugs for thirty-five years, with the insignificant exception of the pre-scription given him on a social visit at Dr. Bickley's private residence, for a temporary ailment, and repeated five days later at the suggestion of Dr. Bickley, when the applicant happened to meet the doctor on the street. This temporary ailment had readily yielded to the prescription, and the applicant had been restored to his usual good health, and when Dr. Mooney, the medical examiner, made a careful examination of the applicant, he failed to find any evidence of that, or any other ailment, and Dr. Mooney declares that while it was possible that he might have failed to discover the alleged engorgement of the applicant's liver on his careful examination, it was not probable. Indeed, so fine a risk was the applicant, that the medical examiner recommended that a policy for $10,000 be issued, if desired by the applicant, though he only wished $4,000.

The evidence of William Ogletree was both competent and credible. All the evidence demonstrates that at the time the application was made, and for very many years anterior thereto, the applicant was a sober, energetic, active man, and possessed

of good health in an eminent degree.    To permit the insurer
to escape liability because of a most technical objection as to
the want of fullness of the answer made in the application, in
not showing that Dr. Bickley had prescribed for the applicant,
under the circumstances referred to by us, and especially when
that obection is unfounded, if William Ogletree is to be be-
lieved, would, it seems to us, sacrifice right and justice.

*Affirmed.*