## NORTHWESTERN MUT. LIFE INS. CO. v. WIGGINS.

(Circuit Court of Appeals, Ninth Circuit. November 1, 1926.)

No. 4934.

1. **Insurance ⬤291(3)—Insurer must show that categorical answers as to health were knowingly false, to avoid risk or cancel life policy.**

Insurer must show that categorical answers as to health were false, and known to be false by insured, to avoid risk or cancel life policy, since it is assumed that such answers, if true, gave all information required.

2. **Insurance ⬤291(5)—"Good health," "illness," and "disease" must be considered, in application for insurance, in light of insured's understanding in connection with which such terms are employed in examination.**

"Good health," "illness," and "disease" must be considered, in application for insurance, in light of insured's understanding in connection with which such terms are employed in examination, and not in light of scientific technical definitions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Disease; Good health; Illness.]

3. **Insurance ⬤665(3)—Insurer held not to have sustained burden of showing that answers as to health of insured, afflicted with myelogenous leukemia, were knowingly false.**

Insurer held not to have sustained burden of showing that insured's answers that health was good were knowingly false, though he was

afflicted with myelogenous leukemia, where doctors had not told him nature of trouble.

**4. Insurance ⬮291(6)—"Sickness."**

"Sickness" is condition interfering with usual avocations.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sickness.]

**5. Insurance ⬮265.**

Answers as to health, in application for insurance, held not warranties.

**6. Insurance ⬮646(3).**

Answers as to health, in application for insurance, are presumed to be true.

**7. Insurance ⬮646(3).**

Fraud is never presumed in answers as to health in application for life insurance.

**8. Cancellation of Instruments ⬮47.**

To cancel life policy, insurer has burden to show by clear, cogent, convincing, and certain proof, that answers as to health, in application, were false.

**9. Cancellation of Instruments ⬮46—In suit to cancel life policy for insured's false statements as to health, telephonic conversation between doctors held immaterial (Or. L. § 6426).**

In suit to cancel life policy for insured's false statements as to health, telephonic conversation between doctors held immaterial, in view of Or. L. § 6426, since it was not in writing and attached to policy.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit by the Northwestern Mutual Life Insurance Company against Marion Wiggins, individually and as executrix and trustee under the will of W. B. Wiggins, deceased. From a judgment of dismissal, plaintiff appeals. Affirmed.

Charles H. Carey, James B. Kerr, and Charles A. Hart, all of Portland, Or., for appellant.

Sidney J. Graham and Roy F. Shields, both of Portland, Or., for appellee.

Before GILBERT and RUDKIN, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge. Plaintiff by suit in equity seeks to cancel an insurance policy issued by it March 19, 1924, on the life of William B. Wiggins, on the ground that material false statements were knowingly made by him as to the condition of his health. The trial court found against the plaintiff and dismissed the suit. Reversal is sought. Among others, the foregoing answers appear:

"10. (a) When were you last confined to the house by illness? How long? What nature? A. Never was, that I remember. (b) When did you last consult a physician, and for what? A. 1924—two weeks ago—for general examination. (c) Have you fully recovered and are you now in good health? A. Yes. (d) Give name and address of the physician who attended you. A. Dr. A. W. Baird. (e) Give name and address of your usual medical attendant. A. Same. (f) Are you willing that your physician be consulted in regard to your health? A. Yes.

"11. Have you had any illness, disease, or accident during the past ten years not mentioned above? A. No."

"18. Have you had since childhood any chronic or constitutional disease or severe injury not fully set forth above? A. No."

It is asserted by appellant that the answers to subdivision (c), question 10, and to question 11, and to question 18, were untrue, and known to be untrue by the insured; that insured was at the time, and had been for several years, afflicted with myelogenous leukemia, a fatal disease, which caused his death. The insured died September 4, 1924. The trial court found, and this is fully sustained by the record, that:

"About four years prior to the date of his application, he (the insured) had some teeth extracted, and bled profusely, and upon examination of his blood by Dr. Baird, his family physician, it was ascertained that he was afflicted with the disease alluded to. Dr. Baird thereafter treated him for some time, and in July, 1922, advised him to take X-ray treatments from Dr. Walker. Dr. Walker gave him 51 treatments from July 15, 1922, until June 23, 1923, and 4 treatments in September of that year, and 3 in February, 1924. During all of this time he reported to Dr. Baird as often as once every two weeks to have an examination of his blood. Neither physician ever disclosed to him the nature or character of his trouble, but made every effort to keep such knowledge from him. They frequently, however, discussed with him his blood count, and Dr. Baird at one time told him that he had anemia, and probably used the word 'chronic' in discussing the matter with him."

[1] The insured made categorical answer to all questions. It must be assumed that such answers, if true, gave all information required to determine acceptance of the risk, and to avoid the risk or cancel the policy it must be shown that the answers were false and known to be false by the insured. Massachusetts Bonding & Ins. Co. v. Duncan, 166 Ky. 515, 179 S. W. 472.

[2, 3] Did the insured have knowledge of serious impairment of health? He knew he had

"chronic" anemia; that is, it had continued for some time. "Good health," "illness," and "disease" must be considered, in an application for insurance, not in the light of scientific technical definitions, but in the light of the insured's understanding in connection with which the terms are employed in the examination. The most specific information that he had was that he had an impoverishment of the blood, or "thinness of the blood." This condition, the record discloses, may be occasioned by hemorrhage. In the insured's case the inception of condition to insured's mind was the extraction of teeth, which was no accident, and the physicians studiously kept from him his true condition. His condition did not interfere with his usual avocation. No indisposition of health had interrupted his daily attention to business except a day or two for cold. He did not complain to his family nor to any one with whom he came in contact. His family believed him in good health.

[4] Sickness is a condition interfering with the usual avocations. Manhattan Life Ins. Co. v. Francisco, 84 U. S. (17 Wall.) 672, 21 L. Ed. 698. He took on new responsibilities, by increasing his interest in business many thousand dollars. He was active and energetic. He was a layman, and, while he may have been conscious of a weakened condition of the body, perhaps from the loss of blood from the cavities of the extracted teeth, the proof does not establish such fact, nor that he knew he had a disease which tended to weaken or to undermine his constitution. Manufacturers' Accident Indemnity Co. v. Dorgan, 58 F. 945, 7 C. C. A. 581, 22 L. R. A. 620. He looked well; the examining physician believed him a good risk.

[5-8] His ignorance of affliction by disease or impairment of health is emphasized by the fact that he did not make his will until a month before his death. His answers were not warranties (Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202), and are presumed to be true (14 R. C. L. p. 1343). Fraud is never presumed, and to cancel the policy the burden is on the complainant to show that the answers were false by clear, cogent, convincing, and certain proof. Atlantic Co. v. James, 94 U. S. 207, 24 L. Ed. 112; Guaranty Life Ins. Co. v. Frumson (Mo. Sup.) 236 S. W. 310.

[9] The explanation of Dr. Baird to the telephonic conversation between him and the complainant's medical examiner we believe with the trial court to be the more convincing. But in view of the Oregon law, which provides: " * * * All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement or statements shall be used in defense of a claim under the policy unless contained in a written application and unless a copy of such statement or statements be indorsed upon or attached to the policy when issued" (Or. L. § 6426)—is not material, since not in writing and attached to the policy. We believe with the trial court that the plaintiff did not sustain the burden imposed by law. Moulor v. American Life Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447; Mutual Life Ins. Co. v. Hurni Packing Co., 260 F. 641, 171 C. C. A. 405; New York Life Ins. Co. v. Moats, 207 F. 481, 125 C. C. A. 143.

The judgment is affirmed.