**PACIFIC MUT. LIFE INS. CO. v. CUNNINGHAM et al.**

No. 647.

District Court, S. D. Florida.

Jan. 5, 1932.

Doggett, McCollum, Howell & Doggett, of Jacksonville, Fla., for complainant.

Baker & Baker and Martin Sack, all of Jacksonville, Fla., for defendants.

STRUM, District Judge.

This is a suit in equity seeking the cancellation of three life insurance policies, issued by complainant to the defendant Cunningham, upon the ground that in his written application for the insurance defendant knowingly made material misrepresentation of facts.

The controversy grows out of the following question and answer in the application for the policies:

"7. What injuries, or illnesses, or treatments by or consultations with physicians or practitioners, have you had during last seven years? Give particulars of your illness, injury, consultation or treatment.

"Answer: None."

By the terms of the application, it was agreed that statements therein contained were "complete, true and correct, and that the company, so believing them, would rely and act upon them." The application is dated November 6, 1928.

The evidence establishes that Dr. Cunningham is a practicing physician, who for twenty years had specialized in X-ray work. For three or four years, or possibly longer, prior to March, 1929, Dr. Cunningham was troubled with a "fullness of the throat." In his words, "the right tonsil would give me a little trouble * * * early in the morning when I swallowed my throat might feel a little sore." For this condition, he would have a lady assistant in his office give him X-ray therapy, "which might be once in two or three months, might be once in five or six months." During said period of three or four years he received eight of such X-ray therapies. These were never for more than four minutes at a time, and not frequent enough to atrophy the tonsils, nor for any purpose other than to reduce the swelling. The X-ray applications were for the same purpose as an ordinary person would use a throat gargle to reduce swelling or irritation of the tonsils, and of about the same effect, though the X-ray was more efficient. His tonsils were never so diseased that he considered it necessary to have them surgically removed. He was not in any sense ill, but would take the X-ray applications "just as he would an aspirin tablet for a headache."

These X-ray applications were given "over the right tonsil" by a young woman assistant of Dr. Cunningham, regularly employed in his office. She was in a sense skilled in doing that work, but not entirely so. She was accustomed to giving the same applications to Dr. Cunningham's patients, but always under his direction and supervision. She was not a licensed physician, and did not administer the X-ray without instructions from Dr. Cunningham, but she was something more than a "mere nurse." She had been employed by Dr. Cunningham seven or eight years, and had been trained by him to give X-ray therapy under his direction and supervision, which she was thoroughly competent to do. The method by which the X-ray therapy was applied to Dr. Cunningham was, in its technical aspect, essentially the same as would have been used on any other patient for a like purpose.

About March, 1929, some four months after the application for insurance here in question, Dr. Cunningham experienced a more pronounced and tenacious condition of fullness in his throat. He consulted other physicians, who discovered a cancerous growth upon the vocal cords, which, of course, are in the larynx and below the tonsils, for the removal of which growth Dr. Cunningham immediately underwent an operation with successful results.

Medical and other officers of the complainant, as well as medical officers of three other reputable insurance companies, testified that in their opinion an accurate and truthful answer to question No. 7 was material for intelligent consideration of the risk, and that, had the above-mentioned X-ray therapies been disclosed, Dr. Cunningham's application would have been rejected by their respective companies.

Other medical specialists, in behalf of the defendant, testified that the malignant growth upon Dr. Cunningham's vocal cords, which was the object of the operation, was of such a nature that it would manifest itself in a week at most, and that it was impossible for it to have existed for as long as three or four months before becoming apparent, and that there was no relation or connection between the malignant growth and Dr. Cunningham's tonsils, that the X-ray applications taken by Dr. Cunningham could not have any effect upon his larynx, and that the application of the X-ray to a temporarily swollen tonsil is very similar and practically equivalent to a gargle, except that it is more efficient.

In view of the above-quoted language of the application, the assured's statements

therein are representations as distinguished from warranties. Substantial truth in everything material to the risk is, therefore, requisite. Being representations, the statements will not avoid the policy, even though untrue in fact, unless insured knew they were untrue or was chargeable with such knowledge. Ætna L. Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356, 366; Wharton v. Ætna L. Ins. Co. (C. C. A.) 48 F.(2d) 37; New York Life Ins. Co. v. Hunter (C. C. A.) 32 F.(2d) 173; Security Life Ins. Co. v. Brimmer (C. C. A.) 36 F.(2d) 176; Metropolitan L. Ins. Co. v. Goodman, 10 Ala. App. 446, 65 So. 449; Alabama Gold L. Ins. Co. v. Johnston, 80 Ala. 467, 2 So. 125, 59 Am. Rep. 816; Reppond v. Nat. L. Ins. Co., 100 Tex. 519, 101 S. W. 786, 11 L. R. A. (N. S.) 981, 15 Ann. Cas. 618.

■ False statements material to the risk, however, if known to be untrue by the applicant when made, will invalidate the policy without further proof of actual conscious intent to defraud or deceive, there being no statute in Florida, such as exists in some states (Mutual Life Ins. Co. v. Hurni [C. C. A.] 260 F. 641), rendering such statements inoffensive, unless made with intent to deceive. Mutual L. Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; Moulor v. American L. Ins. Co., 111 U. S. 335, 345, 4 S. Ct. 466, 28 L. Ed. 447, 450; Phœnix Mutual L. Ins. Co. v. Raddin, 120 U. S. 183, 189, 7 S. Ct. 500, 30 L. Ed. 644, 646; Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 556, 34 S. Ct. 186, 58 L. Ed. 356, 365, 366.

■ Whether or not an applicant has suffered from an illness in the last past seven years is an inquiry material to the risk, in answering which an applicant for insurance must exercise good faith toward the company. The relationship demands fair dealing by both parties. Mutual L. Ins. Co. v. Hilton-Green, supra; Mutual Life Ins. Co. of New York v. Geleynse, 241 Mich. 659, 217 N. W. 790, 56 A. L. R. 702.

■■ The cancellation, however, of an executed contract of insurance is an exertion of the most extraordinary power of a court of equity, which will not be exercised except in a clear case. Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. Ed. 112. Rescission of such contracts by reason of asserted falsity or inaccuracy of answers to questions, even when properly made warranties, are not favored in the law. Mutual Ben. L. Ins. Co. v. Lehman, 132 Ala. 640, 32 So. 733.

■■ Fraud is never presumed. The burden here is upon the complainant, who asserts the fraud, to show "by clear, cogent, convincing and certain proof" that defendant's answer was materially and knowingly false. Northwestern Mutual L. Ins. Co. v. Wiggins (C. C. A.) 15 F.(2d) 646.

■ The application being a part of the policy, and having been prepared by the company, an interpretation thereof will be adopted which is most favorable to the insured, if such interpretation be consistent with the language thereof, and if interpretation be necessary to determine its meaning. Royal Ins. Co. v. Martin, 192 U. S. 162, 24 S. Ct. 247, 48 L. Ed. 385; Bennett v. Cosmopolitan F. Ins. Co. (C. C. A.) 50 F.(2d) 1017; Wharton v. Ætna L. Ins. Co. (C. C. A.) 48 F.(2d) 37.

Putting aside the word "injuries," with which we are not here concerned, question No. 7 of the application, when analyzed, is of dual aspect, and may be thus stated as two questions: (1) "What 'illnesses' have you had during the last seven years?" (2) "What treatments by or consultations with physicians or practitioners have you had during the last seven years?"

First, therefore, do the matters shown in evidence constitute an "illness," not merely in an abstract sense, but within the fair intendment of the question, so as to charge defendant with material concealment?

■ Whether or not the applicant intended to deceive in answering the question is of no moment in this case. Absence of intent to deceive will not relieve against the consequences of conscious falsity. New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934; Provident Sav. Life Assur. Soc. v. Hadley (C. C. A.) 102 F. 856, 857. Nevertheless, the purport and scope of the question, and what disclosures it would ordinarily and reasonably tend to elicit in reply, may be considered upon the issue of falsity vel non. Moreover, for the purpose here under consideration, the word "illness" must be considered in the light of ordinary conception and understanding of that term as used in applications for life insurance, as well as in the light of legal principles defining the term, and not in the light of abstract, scientific technical definitions. Nor is the matter to be determined solely upon the opinions of medical experts, such as were given in evidence here, though the latter will be accorded their appropriate weight. Connecticut Mut. L. Ins. Co. v. Union Trust Co., 112 U. S. 250, 257, 5 S. Ct. 119, 28 L. Ed. 708,

711; Northwestern Mutual L. Ins. Co. v. Wiggins (C. C. A.) 15 F.(2d) 646; Penn Mutual v. Mechanics' Savings Bank (C. C. A.) 72 F. 413, 38 L. R. A. 33.

"Illness" is a term which may properly include an ailment of less serious character than a "disease." Connecticut Mut. L. Ins. Co. v. Union Trust Co., 112 U. S. 250, 259, 5 S. Ct. 119, 28 L. Ed. 708, 712. "Illness" is substantially synonymous with "sickness." Though there is counter authority (see Mutual Life Ins. Co. v. Geleynse, 241 Mich. 659, 217 N. W. 790, 56 A. L. R. 702), the substantial weight of authority is that the word "illness," as used in insurance applications, is understood as a condition interfering with the subject's usual vocation, or an ailment of such character as to affect the soundness of health of the subject involved. Mere temporary or inconsequential indisposition, which does not materially tend to impair health, nor to interfere with the subject's ordinary duties, is not regarded in law as an "illness." Manhattan L. Ins. Co. v. Francisco, 17 Wall. (84 U. S.) 672, 21 L. Ed. 698; Metropolitan Life Ins. Co. v. Brubaker, 78 Kan. 146, 96 P. 62, 64, 18 L. R. A. (N. S.) 362, 130 Am. St. Rep. 356, 16 Ann. Cas. 267; Prudential Life Ins. Co. v. Sellers, 54 Ind. App. 326, 102 N. E. 894; Cole v. Mutual Life Ins. Co., 129 La. 704, 56 So. 645, Ann. Cas. 1913B, 748; The Homesteaders v. Stapp (Tex. Civ. App.) 205 S. W. 743; New York L. Ins. Co. v. Moats (C. C. A.) 207 F. 481; Miller v. Maryland Cas. Co. (C. C. A.) 193 F. 343; McClain v. Provident Sav. L. Assur. Soc. (C. C. A.) 110 F. 80; Billings v. Metropolitan L. Ins. Co., 70 Vt. 477, 41 A. 516, 518; Gruber v. German Aid Soc., 113 Minn. 340, 129 N. W. 581; Schofield's Adm'x v. Metropolitan Life, 79 Vt. 161, 64 A. 1107, 8 Ann. Cas. 1152; National L. S. Ins. Co. v. Bartlow, 60 Ind. App. 233, 110 N. E. 224.

Thus, in Northwestern Mutual Life Ins. Co. v. Wiggins (C. C. A.) 15 F.(2d) 646, it was held that an impoverishment or thinness of the blood, thought by insured to be due to the extraction of the teeth, and undisclosed by the insured in his application, was not such a misrepresentation as would avoid the policy, though insured in fact suffered from myelogenous leukemia, a fatal disease, which ultimately caused his death, assured being ignorant that he suffered from the said disease, but had taken X-ray treatments upon the advice of his physician.

The following ailments, or indispositions, have likewise been held not to be an "illness," so as to avoid for misrepresentation life insurance policies in the circumstances here presented:

Sore throat, or small ulcer of the larynx, Cole v. Mutual L. Ins. Co., 129 La. 704, 56 So. 645, Ann. Cas. 1913B, 748; headaches, muscular pains, and temporary dyspepsia, Mutual Ben. L. Ins. Co. v. Lehman, 132 Ala. 640, 32 So. 733; McClain v. Provident Sav. L. Assur. Soc. [C. C. A.] 110 F. 80; slight, or casual, liver trouble, Connecticut Mutual v. Union Trust, 112 U. S. 250, 5 S. Ct. 119, 28 L. Ed. 708; Mutual Reserve L. Ass'n v. Ogletree, 77 Miss. 7, 25 So. 869; two or three days' illness with malaria, Goff v. Mutual L. Ins. Co., 131 La. 98, 59 So. 28; colds, Rawlins v. State, 124 Ga. 31, 52 S. E. 1, 11; Mutual L. Ins. Co. v. Hurni (C. C. A.) 260 F. 641, certiorari denied 251 U. S. 556, 40 S. Ct. 178, 64 L. Ed. 412, though by statute in that case the intent of the assured affected the decision; spitting blood, Dreier v. Continental L. Ins. Co. (C. C.) 24 F. 670; previous operation for chronic appendicitis, Miller v. Maryland Cas. Co. (C. C. A.) 193 F. 343; intoxication, Bankers' L. Ins. Co. v. Hollister (C. C. A.) 33 F.(2d) 72; cold, resulting in temporary organic complications, Poole v. Grand Circle, 18 Cal. App. 457, 123 P. 349, 350; consulting eye specialist to have glasses adjusted—accident policy, Ward v. Standard Acc. Ins. Co. (C. C. A.) 30 F.(2d) 328, 63 A. L. R. 842, where the subject is exhaustively annotated.

In Missouri State Life Ins. Co. v. Le Fevre (Tex. Civ. App.) 10 S.W.(2d) 267, wherein the insured, in response to a question similar to this, did not mention the three or four times at intervals of some eight months or a year apart that X-ray was applied to reduce a swelling in his throat due to bad tonsils, such failure was held not to be a false statement fatal to the policy. See, also, Wharton v. Ætna L. Ins. Co. (C. C. A.) 48 F.(2d) 37; Mutual Life v. Dodge (C. C. A.) 11 F.(2d) 486, 59 A. L. R. 1290, certiorari denied 271 U. S. 677, 46 S. Ct. 629, 70 L. Ed. 1147; Security L. Ins. Co. v. Brimmer (C. C. A.) 36 F.(2d) 176; New York L. Ins. Co. v. Moats (C. C. A.) 207 F. 481; Cunningham v. Penn Mutual L. Ins. Co., 152 La. 1023, 95 So. 110; Prudential Life Ins. Co. v. Sellers, 54 Ind. App. 326, 102 N. E. 894; Mutual Reserve Life Ins. Co. v. Dobler (C. C. A.) 137 F. 550. Compare Equitable L. Assur. Soc. v. Keiper (C. C. A.) 165 F. 595, the ailment of the character there involved, hemorrhage pancreatitis, being held to be an "illness" as contemplated by this rule, concealment of which was fatal to the policy;

Adler v. New York Life Ins. Co. (C. C. A.) 33 F.(2d) 827, holding that failure to report a chronic stomach ailment was fatal to the policy.

The facts here are also dissimilar from those in Tutewiler v. Guardian Life Co. (C. C. A.) 42 F.(2d) 208, and Equitable Life v. Schwartz (C. C. A.) 42 F.(2d) 646, which involved diseases of a substantial nature. Nor is this such a state of facts as was presented in Manley v. Pacific Mutual (C. C. A.) 35 F.(2d) 337, wherein the assured falsely concealed the recent existence of "severe headaches" accompanied by "mental derangement," obviously not an inconsequential ailment.

The evidence is undisputed that there was no causal connection between the applicant's tonsil, to which the X-ray was applied, and the cancerous growth upon the vocal cords for which the subsequent operation was performed, although that fact is not conclusive upon the question of materiality of the answer as affecting the risk. Union Indem. Co. v. Dodd (C. C. A.) 21 F.(2d) 709, 712, 55 A. L. R. 735; Gardner v. North State Ins. Co., 163 N. C. 367, 79 S. E. 806, 48 L. R. A. (N. S.) 714, Ann. Cas. 1915B, 652.

The tonsil affection is not shown to have had any tendency to shorten insured's life, nor to materially impair his health, nor did it interfere with the performance of his ordinary, every-day duties. It appears to have been no more than a passing, nonacute condition of an inconsequential nature, commonly regarded as trivial—more a sympton than an ailment—certainly not an "illness" within the fair purview and ordinary understanding of the question.

Next, as to the second aspect of question No. 7, above quoted, relating to "treatments by physicians or practitioners":

It is doubtful whether X-ray applications of the character and for the purpose under consideration are "treatments" within the meaning of the question. A "treatment" by a "physician or practitioner," as specified in this question, implies medical or surgical treatment, or something equivalent thereto. In Missouri State L. Ins. Co. v. Le Fevre (Tex. Civ. App.) 10 S.W.(2d) 271, it was strongly inferred that X-ray applications for this purpose were not "medical or surgical treatment" within the meaning of such a question.

Even if it be assumed, without so deciding, that these X-ray applications were "treatments" within the meaning of the question, it is clear that the same were not treatments by a "physician or practitioner." The young lady who administered the application, though "something more than a nurse," was not a physician; the only point in dispute being whether or not she was a "practitioner." In order to be a "practitioner," it is not necessary that one be a physician in the usual sense of that term. One who purports to heal without prescribing drugs may still be a "practitioner." Territory v. Newman, 13 N. M. 98, 79 P. 706, 813, 68 L. R. A. 783. Osteopaths (Mutual Life v. Geleynse, 241 Mich. 659, 217 N. W. 790, 56 A. L. R. 702), and chiropractors (State v. Barnes, 119 S. C. 213, 112 S. E. 62), are held to be "practitioners" in the sense here under consideration.

"Practitioner," as used in this question, means one who holds himself out as qualified and willing to diagnose or treat diseases, ailments, and bodily injuries. Otherwise stated, and to give the term its broadest meaning, to be a "practitioner" contemplates the performance of one or more of the following functions, first: To judge the nature, character, and symptoms of disease; second, to determine the proper remedy; and, third, to administer or prescribe the remedy or treatment. Underwood v. Scott, 43 Kan. 714, 23 P. 942; People v. T. Wah Hing, 79 Cal. App. 286, 249 P. 229; Beile v. Travelers' Ass'n, 155 Mo. App. 629, 135 S. W. 497. One who performs none of those functions is not a practitioner.

In Frank v. South, 175 Ky. 416, 194 S. W. 375, Ann. Cas. 1918E, 682, a nurse who administered anæsthetics under the personal direction and supervision of a duly licensed surgeon was held not to be engaged in the practice of medicine, and therefore not a "practitioner," within the meaning of the statute there involved which defined the practice of medicine substantially as hereinabove stated. See, also, Oswald v. Nehls, 233 Ill. 438, 84 N. E. 619; State v. Mylod, 20 R. I. 632, 40 A. 753, 41 L. R. A. 428; People v. Blue Mountain Joe, 129 Ill. 370, 21 N. E. 923; Nelson v. State, 97 Ala. 79, 12 So. 421.

The assistant who administered these X-ray applications, whether to Dr. Cunningham or to his patients, did not hold herself out as qualified to act, nor did she act, upon her own responsibility or initiative, nor according to her own judgment. She neither diagnosed the ailment, prescribed the remedy, nor regulated the process of administering it. She acted purely as a subordinate aid to Dr. Cunningham. Her functions were purely vicarious and ministerial in character, where-

as the function of a practitioner involves the exercise of an independent discretion. See Atlantic L. Ins. Co. v. Stringer (C. C. A.) 28 F.(2d) 665, in which it was held that mere mechanical administration by another of a remedy which a person cannot administer to himself, but which the subject himself prescribed, does not constitute "consultation" of a physician.

The apparent purpose of this word "practitioner" in the application was to include persons not strictly medical doctors, but who purport to diagnose, prescribe, and heal, such as osteopaths, chiropractors, Christian Science healers, neuropaths, healers by electric or mechanotherapy, and the like. An assistant performing the subordinate and nondiscretionary functions here in question is not so clearly embraced within the term "practitioner" as to hold the defendant guilty of misrepresentation in not disclosing the matters shown in evidence. In its ultimate analysis, the situation here is that Dr. Cunningham prescribed, and with the ministerial aid of an assistant, administered, to himself what he regarded as a simple but effective remedy for a temporary and inconsequential ailment, in no sense an illness. It is not contended that such self-ministration by Dr. Cunningham is within the meaning of the question; the contention being upon the theory that the nurse was a "practitioner."

The matters disclosed by the evidence are not within the fair purport of the question. The court, therefore, finds the equities to be with the defendants, and a decree will be entered dismissing the bill of complaint, at the cost of complainant.