Daniel E. Fitzpatrick, J.
This is an action brought by plaintiff, as administrator of the estate of Maria Barcia, deceased, for damages for the wrongful death of the decedent.
Maria Barcia at the time of her death was a little over two ■years of age. At the request of Dr. Valente, their family physician, she was brought by her parents to the defendant’s hospital on May 5, 1958. They presented a note from Dr. Valente that she be admitted and hospitalized. The admitting physician, Dr. Baum, upon examination and over his own signature in the hospital records, found the following symptomology: a temperature of approximately 104.2 degrees Fahrenheit, pulse rate of 120, respiration 48 per minute, tonsils one to two times enlarged and mildly inflamed, throat red, had running nose, respiratory distress, coarse sounds in chest, rales along the border of the spine in the scapular region, minimal subcostal retractions. He also went on to say he found the child ‘1 looking acutely ill to a mild degree ”. A throat culture was taken, a chest X ray and a blood count. An examination of. the wet X ray indicated a pneumonitis in the right lower lobe of the lung posteriorly, and the-blood count showed the white corpuscles 20,000 or above, indicating the- presence of an infection.
-. - As noted above, in connection with the examination, Dr. Baum ordered several tests, one of which was a throat culture. All *527 tlie experts who testified seem to agree that the results of this culture could not he known for 24 hours, or, if it was hurried, in 13 hours at the very least. Upon receipt of the blood count and wet X ray, Dr. Baum — the parents testified — told them the infant was not ill enough to be hospitalized and recommended that she be returned to her homo and he gave a list of certain things to be done for her and drugs to be administered; he also told them to return her to the care of the local family doctor — in this case Dr. Valente. All this is in Dr. Baum’s handwriting.
Pursuant to the doctor’s instructions, the parents took the child home. Her condition grew progressively worse and again they called in the family doctor. He ordered her to be taken back to the defendant hospital. This time and on the following morning she was admitted, and from the evidence the court believes every effort was made to save her life. Despite these efforts she expired at 9:35 p.m. on May 6, 1958.
The parents further testified that the surgeon who attended her, and who had the sad duty of informing them of her death, asked “ Why didn’t you bring her sooner, I might have been able to save her ”, The tragic truth is, she had been brought in sooner and turned away. This poses the question of defendant’s negligence. Only one of the doctors who saw the decedent testified— namely, the family doctor and he recommended her hospitalization. Dr. Baum was not called. His absence was explained to the court by stating that he is now believed to be in the State of Washington, beyond the jurisdiction of the court. No reason is given for failing to take his deposition. The other medical testimony is by experts. One of these, for the plaintiff, says she should have been taken in when presented on May 5, 1958, and that it was professional negligence not to do so. The other expert for the defendant is the present head of the pediatric department of the defendant hospital, and he stated — not having seen the child — that upon the record, he would have made the same determination as Dr. Baum and turned the decedent away. He further stated that the hospital cannot accept everyone who applies for admission. Simple addition shows two doctors who say she should have been hospitalized and two who say the contrary. However, only one of the four who saw the actual condition of the child at the time she was sent to the hospital testified, and he was the one who recommended hospitalization. The other doctor who rejected her "was not in court to defend his judgment.
In answer to'the court’s question as to whether he could state with reasonable certainty that she should have been admitted to the hospital, Dr. Valente, the family doctor, stated he could *528 not say because that was up to the admitting physician. Proféssional loyalty, however understandable, cannot blind us to the facts, Time here was of the essence and the plaintiff’s expert says so without equivocation. He states they should have taken her into the hospital and awaited or hurried the results of the throat culture. This would have shown the presence of staphylococcus aureus germs, and they then would have known with wliat they were dealing. The failure of Dr. Baum to do this before sending the sick child home, in his opinion constituted negligence on the part of the defendant hospital and its agents.
The defendant’s expert said in rebuttal that in his opinion if everything had been known at the time the child was first presented, and she had been taken in at that time, instead of the next day, it still would have been impossible to-save her life. When queried as to what he based his opinion on, he stated "in substance that it was based upon a kind of professional ignorance ; that the effect and rapidity of staphylococcus aureus pneumonia, as a secondary infection, was not well understood in 1958, and that, in his view, even if Dr. Baum had had the results of the throat culture, showing these germs present, he would not have looked for that kind of pneumonia. This was contradicted by plaintiff’s expert who, although in third year medical school at the time of the occurrence, states that it was known at that time, and further that it was a type of pneumonia that spreads very rapidly and with dire results if not quickly diagnosed and treated.
Both experts — in answer to the court’s question — conceded that in the absence of the throat culture report, staphylococcus aureus pneumonia could not be ruled out. The report was not awaited by Dr. Baum before sending the child away. Defendant’s expert’s only plea is that it would not have made any difference if the report was known.
This court is not bound to accept that opinion as a matter of law, and as a matter of fact it rejects it. The defendant’s expert made a valiant attempt to explain the apparent contradiction in Dr. Baum’s statement that the child was “ looking acutely ill to a mild degree.” The exact phraseology escapes the court at the moment but it was sought to explain it away by stating that Dr. Baum must have meant that she looked ill but that her symptoms came on suddenly.
Such was the history of the case.
Dr. Baum was the duly authorized admitting physician of the defendant hospital. He had the opportunity to examine and appraise the illness of the plaintiff’s decedent. This is amply demonstrated by the defendant hospital’s record. He rejected *529 her for admission. There is sufficient proof upon which to base a finding of negligence on his part, and an appropriate inference can be drawn from the failure to produce Dr, Baum at the trial or to have taken his deposition. (See Meiselman v. Crown Hgts. Hosp., 285 N. Y. 389.) The defendant hospital is, therefore, responsible for his acts. (Bing v. Thunig, 2 N Y 2d 656; Becker v. City of New York, 2 N Y 2d 226.)
No one can put a value upon a human life; damages in these cases must be and are more or less speculative as to “ pecuniary loss”. Under the circumstances established herein, this court finds the defendant liable to the plaintiff in damages for the pecuniary loss because of the death of this child in the sum of $8,401.75.
Let plaintiff have judgment accordingly.