**Lorene Heflin HILL, Administratrix of the Estate of Juanita Heflin Taylor a. k. a. Monroe, Appellant,**

v.

**OHIO COUNTY, Kentucky, et al., Appellees.**

Court of Appeals of Kentucky.

Sept. 25, 1970.

As Modified on Denial of Rehearing July 2, 1971.

John D. Miller, Richard D. Gilliam, Owensboro, for appellant.

Carmol D. Cook, Hartford, for appellee Eva Hartley.

Ronald M. Sullivan; Sandidge, Holbrook, Craig & Hager, Owensboro, for appellee, Ohio County, Kentucky.

MACAULEY SMITH, Special Commissioner.

.In this action for wrongful death, plaintiff claimed $100,000 for "loss of earnings," $521 for funeral and $50,000 punitive damages against Ohio County, as owner and operator of Ohio County Hospital, the members of the fiscal court and the hospital board, two of the four doctors admitted to practice in the hospital, and Eva Hartley, R.N., in charge of the "floor" at the time plaintiff's intestate was refused admission. Pursuant to the ruling in Rather v. Allen County War Memorial Hospital, Ky., 429 S.W.2d 860, to the effect that under KRS 67.186 (and Constitution Sec. 231) a county is immune from such a suit except to the extent of insurance coverage, if any, authorized under KRS 67.186, plaintiff amended to reduce her demand to $48,000 (within the limits of the admitted $50,000 insurance policy with the Travelers).

Discovery was availed of, and complied with, and after hearing arguments and receiving memoranda, the trial court sustained defendants' motion for summary judgment and dismissed the action as against defendants Ohio County Hospital, Ohio County, and Eva Hartley, without adducing any reasons therefor. (This final order recites that all other defendants had been previously dismissed—the record on appeal contains no such previous order).

The uncontradicted material facts brought out by the answers to discovery interrogatories and depositions of Nurse Hartley and Dr. Robert T. Johnson were as follows:

Decedent approached Nurse Hartley at her desk in the hospital before 9 a. m. on May 12, 1967, said that her name was Juanita Monroe, her doctor was in Illinois, she had come to Ohio County to attend a funeral and she was afraid she would not be able to get back to Illinois before she had her baby. Nurse Hartley assumed she wanted to be admitted for obstetrical (herein OB) care.

There were only four doctors admitted to practice in the hospital. Nurse Hartley consulted her list and found that Dr. Beard (according to the doctors' informal agreement among themselves) was "on call" that week. He was at the time in the operating room. Upon Nurse Hartley's inquiry whether to admit decedent, Dr. Beard required that he did not handle OB cases. Upon advice from the hopsital administrator that another of the four doctors, Dr. Johnson, was making rounds, Nurse Hartley asked him the same question and Dr. Johnson replied that he did not handle "walk-in OBs."

Decedent did not advise that she had been delivered of a child at the Ohio County Hospital in June 1964, admitted by Dr. Charles Price of Hartford (one of the four doctors practicing in the Hospital) and had again consulted Dr. Price within the past year.

Decedent was advised that she could get OB service in Owensboro and Louisville, with doctors on call, and replied she did not want to go to Owensboro or Louisville, but would call a taxi to go home. Nurse Hartley assisted her in making the call. Being advised that decedent was still there more than an hour later, Nurse Hartley consulted with the hospital administrator and was told to call Bill Danks, ambulance driver, who promptly appeared and offered to take decedent wherever she wanted to go. She declined, and a taxi finally took her away.

Her baby was born at home (apparently unattended) during that night. Decedent called Bill Danks who came immediately, and about 6 a. m. called Dr. Johnson, who asked some questions concerning the state

of mother and child and advised Danks to take them to Owensboro. Decedent was dead on arrival at the Owensboro Hospital, some 25 miles from Hartford.

Ohio County Hospital is a public hospital, constructed (at least in part) with Hill-Burton funds which are for construction only. It is a one-floor building and the county pays the cost of operation, including an administrator (not a doctor) and at least two registered nurses. There are no salaried doctors, no residents or interns, and only four local doctors are admitted to practice. The hospital rules properly provide that no patient may be admitted without an order from a doctor to do so—KRS 311.560 provides that no one may practice medicine without being licensed to do so. In Frank v. South (1917), 175 Ky. 416, 194 S.W. 375, it was held that the administering of anesthetics by a registered nurse did not constitute the practice of medicine by her when *always* done under the personal direction and supervision of a licensed surgeon.

In 40 Am.Jur., 2d 859, Hospitals and Asylums, Sec. 12, it is said:

"With respect to a public hospital, it has been said that since all persons cannot participate in its benefits, no one has, individually, a right to demand admission. The trustees or governing board of a public hospital alone determine the right of admission to the benefits of the institution, and their discretion in this regard will not be reviewed by the courts at the suit of an individual applicant."

Appellant chiefly relies upon Wilmington General Hospital v. Manlove (1961), Del., 4 Storey 15, 174 A.2d 135; O'Neill v. Montefiore Hospital (1960), 11 A.D.2d 132, 202 N.Y.S.2d 436; and Barcia v. Society of New York Hospital (1963), 39 Misc.2d 526, 241 N.Y.S.2d 373.

In Manlove the refusal of a summary judgment for defendant hospital was affirmed, the court saying 174 A.2d at p. 141:

"In the circumstances we think the case should go back for further proceedings. We should add, however, that if plaintiff cannot adduce evidence showing some incompetency of the nurse, or some breach of duty or some negligence, his case must fall. Like the learned judge below, we sympathize with the parents in their loss of a child; but this natural feeling does not permit us to find liability in the absence of satisfactory evidence."

In discussing the Montefiore case, the court said in Manlove at page 140:

" * * * Two judges dissented, pointing out that the doctor called by the nurse did not, after talking to the patient, indicate that any emergency treatment was required, or request that the patient be admitted to the hospital. In these circumstances they found no liability.

"The difference of opinion in that case seems to turn on the question whether, by calling a physician for the applicant, the nurse assumed to give him hospital service. The case does not discuss the questions of what constitutes an emergency, and what is the duty of the nurse in such cases.

"As to the majority holding that the nurse's telephone call gave rise to liability, we respectfully dissent. We think the minority opinion is the better view."

In Montefiore a man in pain from a heart ailment applied at the emergency room of defendant hospital and was told that the hospital did not care for hospital-insurance-plan patients. The nurse did telephone for a Dr. Graig who was one of the doctors on call for such patients. The

patient conversed with him on the telephone and according to the doctor refused his services and asked for his own Dr. Kirstein who would not be available until 8 o'clock. The action as against the hospital was dismissed at the close of plaintiff's case and as against the doctor at the conclusion of all of the evidence. The Supreme Court, Appellate Division, reversed for a new trial, two justices dissenting as follows:

"I concur in the order for reversal and for a new trial as against defendant Frank Graig. I dissent and vote to affirm the dismissal of the complaint against defendant Montefiore Hospital. Through the efforts of the hospital's nurse, the decedent had been enabled to communicate by telephone with Dr. Graig who had knowledge of the decedent's presence at the hospital. Dr. Graig did not indicate in any manner that emergency treatment was required nor did he direct or request the admittance of the decedent as a patient to the hospital. Any action by the nurse contrariwise would not have been in keeping with her position. It is my view that the conduct of the nurse was by way of favor and I fail to see any legal basis for liability on the part of the hospital."

This dissent was approved in Manlove.

In *Barcia* an extremely ill child was admitted as an emergency, several tests were taken by a staff doctor and were put in process of culture, the child was sent home and then readmitted, whereupon it almost immediately died. This case is clearly distinguishable because it presented an emergency and an admission to the hospital and an undertaking to afford treatment, as involving possibly malpractice or negligence on the part of a staff doctor.

In the instant case, the decedent was not admitted to the hospital nor was the element of critical emergency apparent. The hospital nurse acted in accordance with valid rules for admission to the facility. The uncontradicted facts demonstrate that no breach of duty by the hospital occurred. The nurse could not force the private physicians to accept decedent as a patient. The nurse did all she could do for the decedent on the occasion in question. Therefore, the hospital and the nurse were entitled to dismissal as a matter of law.

The judgment is affirmed.

MILLIKEN, C. J., and HILL, NEIKIRK, PALMORE and STEINFELD, JJ., concur.

OSBORNE and REED, JJ., dissent.