Dr. Frank Traylor Executive Director Colorado Department of Health 4210 E. 11th Street Denver, Colorado
Dear Dr. Traylor:
I am in receipt of a letter from Dr. Anthony Robbins of October 17, 1978, in which Dr. Robbins requests that this office review the validity of an earlier opinion of August 29, 1969 by then-Attorney General Duke Dunbar regarding the requirement that nursing care facilities be staffed on a twenty-four hour per day basis by a registered nurse. Dr. Robbins' letter also seeks clarification concerning the impact of the recently enacted S.B. 89 (1978 Session Laws chapter 87, p. 408, hereinafter referred to as "S.B. 89") on staffing of nursing personnel in rural long-term health care facilities.
QUESTION PRESENTED AND CONCLUSION
More specifically, I note the following three principal issues raised by Dr. Robbins' inquiry:
1. Does S.B. 89 affect the validity of the Department's enforcement of the twenty-four hour registered nurse requirement?
My conclusion is "no."
2. Do the Colorado statutes require the presence of a registered nurse in a nursing care facility on a twenty-four hour per day basis?
My conclusion is "no."
3. How does S.B. 89 affect the Department's authority regarding promulgation of rules concerning staffing requirements for rural facilities for (a) registered nurse personnel and (b) overall nursing personnel?
 The Department's rulemaking authority is restricted generally to the limited requirement of a registered nurse on the day tour of duty seven days per week.
ANALYSIS
By his opinions of August 29, 1969, and March 10, 1970, then-Attorney General Duke Dunbar maintained that nursing care facilities in Colorado are required by law to have a registered nurse on duty at all times. This opinion was premised on General Dunbar's interpretation of the nurse practice acts in Colorado. (C.R.S. 1973, 12-38-101 et seq. regarding practical nursing and C.R.S. 1973, 12-38-201 etseq. regarding professional nursing.)
Since the rendition of this opinion, the Health Department has enforced the twenty-four hour registered nurse requirement on the sole authority of this opinion. This requirement does not appear as a specific rule or regulation of the Department of Health.
In light of this, Dr. Robbins' letter seeks clarification of the impact of S.B. 89 on his department's enforcement of the twenty-four hour registered nurse requirement. S.B. 89 adds a new paragraph to the Colorado health statute regarding the powers of the Department of Health, and prohibits the Department from promulgating
 any rule, regulation, or standard relating to nursing personnel for rural nursing care facilities, rural intermediate care facilities, and other rural facilities of a like nature more stringent than the applicable federal standards and regulations.
(C.R.S. 1973, 25-1-107(3), as amended.)
It is my opinion that because the Department of Health does not enforce the registered nurse requirement on the basis of "any rule, regulation, or standards," but rather by virtue of General Dunbar's interpretation of Colorado law, that the Department's enforcement is not violative of S.B. 89.
As stated above, the Department of Health currently enforces the twenty-four hour registered nurse requirement on the basis of General Dunbar's interpretation of the Colorado nurse practice acts. Although the rationale of his interpretation is not explicitly stated, his opinion cites and quotes the definition of the "practice of practical nursing" contained in C.R.S. 1973,12-38-103(5) which reads as follows:
 "Practice of practical nursing" means the performance for compensation of selected acts in the care of the ill, injured, or infirm and administering selected treatments and medications prescribed by a physician or dentist under the direction of a registered professional nurse, a licensed physician, or a licensed dentist, which acts require the skill, judgment, and knowledge required for a license pursuant to section 12-38-113, but do not require the substantial specialized skill, judgment, and knowledge required in professional nursing.
(Emphasis added.) In addition, the opinion cites and quotes the definition of the "practice of professional nursing" which currently reads, in pertinent part, as follows:
 "Practice of professional nursing" means the diagnosing and treating of human responses to actual or potential health problems through such services as:
 (b) Providing nursing that is supportive and restorative to life and well-being directly to the patient or through the supervision and teaching of other nursing personnel or assistants;
C.R.S. 1973, 12-38-202(9) (emphasis added).
I agree with General Dunbar's conclusion that the nurse practice acts provide that licensed practical nurses must function under the "direction" of registered nurses, physicians or dentists (Practical Nurse Practice Act, C.R.S. 1973, 12-38-103(5)), and also that registered nurses are required to "supervise" other nursing personnel (Professional Nurse Practice Act, C.R.S. 1973, 12-38-202(9)(b)). Reading these two sections together, it is clear that registered nurses must "direct" and "supervise" other nursing personnel in the performance of their nursing functions. The principal issue is whether this language requires that a registered nurse be physically present during the performance of duties by the nursing personnel. Contrary to General Dunbar's opinion, I find no legal support for such a blanket requirement.
The terms "direction" and "supervision" are ambiguous. They are broad enough to require either constant physical presence or merely devotion of that amount of time necessary to see that instructions have been or are being properly carried out.See, e.g. Continental Casualty Co. v.Borthwick, 177 So.2d 687 (Fla.App. 1965); Amselv. Brooks, 141 Conn. 288, 106 A.2d 152 (1954). Because our courts have not had occasion to construe these terms, the case law of other jurisdictions has been considered for guidance.
In several reported decisions state courts have addressed the issue of supervision and direction in the context of various medical practice acts. Amsel v. Brooks,supra; State v. Collins, 178 Iowa 73,159 N.W. 604 (1916), Frank v. South, 175 Ky. 416,194 S.W. 375 (1917). However, in each of these decisions the court either ignored or avoided the question of whether physical presence was required.
Courts have also considered this issue in the context of construction contracts which often require architects or engineers to supervise or direct the activities of construction workers. Catalano v. Bopst, 170 A. 562 (Md.App. 1934);Walker v. Wittenberg, Delony and Davidson, Inc.,241 Ark. 525, 412 S.W.2d 621 (1967). In both of these cases the court refused to interpret "direction" and "supervision" as requiring the day-to-day presence of the engineer or architect.
Moreover, the Illinois Supreme Court has held that where a statute required that certain work activities be performed "under the direction" of a supervisor, that requirement is met when the conduct of the work is "reasonably within the control" of the supervisor. Kelleyville Coal Co. v. Bruzas,223 Ill. 595, 79 N.E. 309, 311 (1906). In this case, the court found compliance with the statute notwithstanding the fact that the supervisor was not physically present. In reaching its conclusion the court considered the nature of the work being performed and the expertise of those being directed.
Finally, in Continental Casualty Co. v. Borthwick,supra, the Florida Court of Appeals construed the term "supervision" in the context of a school insurance policy. There, the court held that the term "supervision", without any qualifying adjectives, did not require the physical presence of school personnel. Cf. Aetna Insurance Co. v.Hellmuth, Obata, Kassabaum, 392 F.2d 472 (8th Cir. 1968).
The foregoing cases demonstrate that the use of the terms "supervision" and "direction" in a statute does not,per se, require the physical presence of the individual providing such supervision and direction. It appears that the amount of supervision or direction required may depend upon the expertise of the individual being directed and the nature of the work being performed. Thus, certain tasks might be explicitly stated as requiring the presence of a registered nurse. More routine tasks would not require such presence.
I find no support for the blanket proposition that physical presence is a necessary element of either "direction" or "supervision". For this reason I now modify the opinion of the former attorney general in this regard.
 Issue 3: How does S.B. 89 affect the Department's authority regarding promulgation of rules concerning staffing requirements for rural facilities for (a) registered nurse personnel and (b) overall nursing personnel?
On the basis of the preceding conclusion, it is my opinion that there is currently no legal support for the Department's blanket enforcement of the twenty-four hour registered nurse requirement. For this reason, should the Department desire to continue such enforcement, new rules must be promulgated to provide the appropriate legal basis therefor.
However, while the Department has a free hand in promulgating such rules relating to nonrural facilities, S.B. 89 restricts the Department's authority regarding rural facilities. The bill provides that, in the case of rural facilities, the Department shall not pass any rules which are more stringent than the federal standards concerning nursing personnel.
On the issue of registered nurse staffing, the federal standards require that a facility provide the services of a registered nurse on the day tour of duty, 7 days a week.42 C.F.R. § 405.1124. Therefore, as a general proposition the Department's rulemaking authority is limited to this degree. However, the federal standard also provides that "nursing personnel . . . are assigned duties consistent with their education and experience and based on the characteristics of the patient load." In light of this additional proviso, there appears to be flexibility within the federal regulations to permit the Department to require registered nurse coverage above and beyond the day tour of duty. For instance, the requirement of additional registered nurse coverage would be authorized if the licensed practical nurses and other nursing personnel in a particular facility were inexperienced or the patient load indicated a particularly skilled level of treatment was needed.
Lastly, Dr. Robbins' letter requests my opinion on how S.B. 89 impacts on the Department's current rule which requires that skilled nursing facilities staff their nursing personnel at a level so as to provide a minimum of two hours of nursing care per patient per twenty-four hour period. 6 C.C.R. 1011-1, ch. V, § 11.3. As a practical matter this rule requires that a facility with a patient load of 100 employ a sufficient number of nursing personnel, including registered nurses, licensed practical nurses and nurse aids, so as to provide two hundred hours of nursing care over each twenty-four hour period.
On this issue of overall nurse staffing the federal regulation states that a skilled nursing facility shall provide:
 An organized nursing service with a sufficient number of qualified nursing personnel to meet the total nursing needs of all patients in the facility.
 42 C.F.R. § 405.1124 (emphasis added). The question is whether the two-hour requirement is more stringent than the federal requirement of providing sufficient nursing personnel to meet the total nursing needs of the patient. The answer to this question falls outside the scope of this legal opinion as the question raises an issue of fact rather than an issue of law. If, as a general proposition, a skilled facility cannot meet the total nursing needs of the patients with less than two hours of care per patient per day the rule is not violative of S.B. 89. This is a question that is best left to the professional expertise of your department. However, as a legal matter, I can say that the rule is not more stringent that the federal requirement on its face.
SUMMARY
In summary, I conclude that while S.B. 89 failed in its attempt to strike down the twenty-four hour registered nurse requirement in rural facilities, that requirement is not legally supported by the nurse practice acts as I interpret them. I therefore have modified the previous opinion of Attorney General Dunbar which required the presence of a registered nurse at all times in a nursing care facility. I see no support for this blanket requirement. Instead, it appears that the amount of direction required is dependent upon the expertise of the individual being directed and the nature of the work being performed. Thus, certain tasks might be explicitly stated as requiring the presence of a registered nurse, while other more routine tasks would not require such presence.
However, this is not to say that the Department could not pass its own rule requiring the twenty-four hour presence of a registered nurse. In promulgating such a rule, S.B. 89 must be considered as it impacts on rural facilities. In this regard, the Department's rulemaking authority is restricted generally to the limited requirement of a registered nurse on the day tour of duty seven days per week. However, the federal rule also allows for increased registered nurse coverage in light of the experience level of the overall nursing staff and the characteristics of the patient load.
Finally, regarding the Department's rule requiring at least two hours of nursing care per patient per twenty-four hour period, this rule is not, on its face, more stringent than the federal provision requiring sufficient personnel to meet the total nursing needs of the patients. If the Department determines that, as a general proposition, a skilled nursing facility cannot meet the total patient needs with less than two hours of care per patient, then this rule would not be in excess of the Department's statutory authority.
Very truly yours,
 J.D. MacFARLANE Attorney General
NURSES, PRACTICAL NURSES, REGISTERED NURSING AND CONVALESCENT HOMES
C.R.S. 1973, 12-38-101, et seq C.R.S. 1973, 12-38-201, et seq C.R.S. 1973, 25-1-107(3), as amended
HEALTH, DEPT. OF Medical Care Reg. Devlp. REGULATORY AGENCIES, DEPT.
Colorado statutes do not require presence of a registered nurse in a nursing care facility 24-hr/day; S.B. 89 (1979) has the effect of limiting the Department of Health's rulemaking authority requiring nursing personnel in rural facilities to the limited requirement of a registered nurse on the day tour of duty seven days per week. S.B. 89 (1979) does not prevent the Department of Health from enforcing the rule requiring two hours of nursing care per patient per 24 hour period to rural facilities unless this requirement can be shown to be more stringent than the federal provision requiring sufficient personnel to meet the total nursing needs of the patients.